FOX, Justice.
*655 [¶1] JonMichael Guy, an inmate in the custody of the Wyoming Department of Corrections (WDOC), sued the WDOC under 42 U.S.C. § 1983, seeking to require that it recognize Humanism as a religion. He sought declaratory and injunctive relief, and also sought monetary damages from the WDOC's Director, Robert O. Lampert, and its Deputy Administrator, Julie Tennant-Caine, in their individual capacities. After he filed his complaint, the WDOC officially recognized Humanism as a religion. As a result, the district court dismissed Mr. Guy's complaint. In addition, the district court denied Mr. Guy's motion for attorney fees under 42 U.S.C. § 1988 because Mr. Guy was not a "prevailing party." We affirm.
ISSUES
[¶2] We rephrase Mr. Guy's issues:
1. Does the voluntary cessation exception to the mootness doctrine apply in Wyoming?
2. Does the district court's conclusion that Mr. Guy failed to exhaust his administrative remedies require reversal?
3. Were Mr. Lampert and Ms. Tennant-Caine entitled to qualified immunity?
4. Did Mr. Guy preserve his argument that the Defendants' certificate of service, attached to their motion to dismiss, was invalid?
5. Was Mr. Guy a "prevailing party" under 42 U.S.C. § 1988 ?
FACTS
[¶3] Mr. Guy is a WDOC inmate housed at the Wyoming Medium Correctional Institution (WMCI) in Torrington. On December 8, 2017, Mr. Guy and the American Humanist Association (AHA) filed a complaint under 42 U.S.C. § 1983 against the Wyoming Department of Corrections.[1] He also sued the Director of the WDOC, Robert O. Lampert, and his Deputy Administrator, Julie Tennant-Caine, in their official and individual capacities. Mr. Guy alleged that the WDOC refused to allow practicing Humanists to "form a Humanist study group to meet on the same terms that Defendants authorize inmates of theistic religious traditions, and other religions, to meet; and ... to allow inmates to identify as Humanists for assignment purposes."[2] He claimed that the WDOC's refusal violated the First and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2, 6, 7, 18, and 19, of the Wyoming Constitution. He sought "injunctive and declaratory relief and [monetary] damages[.]"
[¶4] Mr. Guy raised two claims that are relevant to this appeal.[3] In the first claim, he sought monetary damages against Mr. Lampert and Ms. Tennant-Caine in their individual capacities. He sought $120,000 for violation of his civil rights, unspecified additional damages for "emotional distress, shame, humiliation, loss of enjoyment of life and mental anguish," and "exemplary and punitive damages."
[¶5] In his second claim, Mr. Guy sought declaratory and injunctive relief. He requested *656 an injunction to preclude the Defendants from:
• Depriving him of his freedom of religion;
• Preventing him from associating with other Humanist practicing inmates; and
• Favoring some religions over others.
In addition, he asked the district court to order that the Defendants recognize Humanism as a religion, permit a Humanist study group, and prohibit discrimination against all Humanist inmates. Finally, Mr. Guy sought a declaratory judgment affirming his right to practice Humanism, declaring that exclusion of Humanism violates the constitution, and declaring that the Defendants violated Mr. Guy's constitutional rights.
[¶6] On December 29, 2017, after Mr. Guy had filed his complaint, the WDOC executed a "Director's Executive Order" that formally recognized Humanism as a religion and added Humanism to the WDOC's "Handbook of Religious Beliefs and Practices." It also recognized three Humanist holidays. On January 23, 2018, the Defendants filed a motion to dismiss the complaint. They argued the executive order mooted Mr. Guy's claims seeking recognition of Humanism. They also argued his "allusions" to specific Humanist practices, such as fire ceremonies, a Humanist diet, and a Humanist study group, in addition to being improperly pleaded, were not ripe for review because Mr. Guy did not request that the WDOC permit these practices before filing suit. Finally, Mr. Lampert and Ms. Tennant-Caine argued they were entitled to qualified immunity as to Mr. Guy's claim for monetary damages.
[¶7] The district court granted the Defendants' motion. The court relied on the WDOC's executive order that added Humanism to the list of recognized religions to find Mr. Guy's claims were moot. It concluded the mootness doctrine extinguished Mr. Guy's request for declaratory and injunctive relief and his demand for monetary damages against Mr. Lampert and Ms. Tennant-Caine. The court rejected Mr. Guy's argument that the voluntary cessation exception to the mootness doctrine applied because that exception had not been adopted in Wyoming. It did not address whether Defendants were entitled to qualified immunity on Mr. Guy's claim for monetary damages because of its conclusion that this claim was also moot.
[¶8] After the court dismissed his complaint, Mr. Guy sought to recover his attorney's fees under 42 U.S.C. § 1988(b). That statute permits the "prevailing party" in a case under § 1983 to recover "a reasonable attorney's fee." The district court denied the motion because Mr. Guy was not a "prevailing party." Mr. Guy appealed both of the court's orders. We consolidated his appeals for argument and decision.
DISCUSSION
[¶9] The majority of Mr. Guy's complaint has been remedied by the WDOC's executive order, which recognizes Humanism as a religion. The question, however, is whether the district court correctly dismissed all of Mr. Guy's claims for relief.
STANDARD OF REVIEW
[¶10] We evaluate a district court's decision on a motion to dismiss de novo. Wyo. Guardianship Corp. v. Wyo. State Hosp., et al. , 2018 WY 114, ¶ 16, 428 P.3d 424, 432 (Wyo. 2018). We also apply de novo review to determine whether an issue is moot, In Interest of DJS-Y , 2017 WY 54, ¶ 6, 394 P.3d 467, 469 (Wyo. 2017), and to determine whether a state official is entitled to qualified immunity. Abell v. Dewey , 870 P.2d 363, 367 (Wyo. 1994).
I. The voluntary cessation exception to the mootness doctrine has not been adopted in Wyoming
[¶11] The crux of Mr. Guy's complaint was his request for an injunction that required the WDOC to recognize Humanism as a religion. Because the WDOC did just that when it issued its executive order, the district court concluded that Mr. Guy's complaint was moot. It then concluded that the voluntary cessation exception to the mootness doctrine, which may apply in federal court, did not apply because this Court has never adopted that exception.
[¶12] On appeal, Mr. Guy contends that the district court erred when it concluded *657 that the voluntary cessation exception to mootness does not apply in Wyoming state courts. He does not, however, address the district court's conclusion that the exception has never been adopted in Wyoming. Instead, he simply asserts that the "State and Federal Standards for Mootness are Consistent." He then goes on to cite to numerous federal opinions that have applied the voluntary cessation exception in federal court. "[T]he central question in a mootness case is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' " Williams v. Matheny , 2017 WY 85, ¶ 15, 398 P.3d 521, 527 (Wyo. 2017) (quoting In re Guardianship of MEO , 2006 WY 87, ¶ 27, 138 P.3d 1145, 1153-54 (Wyo. 2006) ).[4] "However, there are three exceptions to the operation of that doctrine which relate to issues of great public importance, issues with respect to which it is necessary to provide guidance to state agencies and lower courts, and controversies capable of repetition while evading review." City of Casper v. Simonson , 2017 WY 86, ¶ 16 n.7, 400 P.3d 352, 355 n.7 (Wyo. 2017) (citations omitted).
[¶13] Mr. Guy did not rely on any of these exceptions in the district court. Instead, in his response to the Defendants' motion to dismiss, he made a passing reference to the voluntary cessation exception which applies in federal courts. (citing Am. Humanist Ass'n v. United States, et al. , 63 F. Supp. 3d 1274 (D. Or. 2014) ). In federal court: "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle , 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). However, mootness doctrine in federal court arises from constitutional Article III limitations on jurisdiction. See, e.g. , Powell v. McCormack , 395 U.S. 486, 496 n.7, 89 S.Ct. 1944, 1950 n.7, 23 L.Ed.2d 491 (1969). Article III limitations on federal courts, and any applicable exceptions to those limitations, do not apply in state court: "We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute." ASARCO Inc. v. Kadish , 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989) (citations omitted) (emphasis added); Allred v. Bebout , 2018 WY 8, ¶ 35, 409 P.3d 260, 269 (Wyo. 2018) (recognizing state standing analysis "should not be governed by federal law").
[¶14] Turning to Wyoming mootness doctrine, we are unable to find any case where we have cited, let alone adopted, the voluntary cessation exception. Moreover, Mr. Guy presents no argument why we should adopt the exception now. See Lemus v. Martinez , 2019 WY 52, ¶ 43, 441 P.3d 831, 841 (Wyo. 2019) (refusing to consider appellate argument not supported by cogent argument) (citation omitted).[5] We affirm the district court's decision that Mr. Guy's claim for injunctive relief is moot.
II. The district court's conclusion that Mr. Guy failed to exhaust his administrative remedies does not require reversal
[¶15] We now turn to Mr. Guy's argument that the district court improperly *658 dismissed his complaint "for failure to exhaust administrative remedies." It is true that, in its order, the district court faulted Mr. Guy for failing to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 (the PLRA). See Chapman v. Wyo. Dept. of Corr. , 2016 WY 5, ¶ 16, 366 P.3d 499, 508 (Wyo. 2016) ("The Prison Litigation Reform Act of 1995 requires inmates to exhaust administrative remedies available to them before they can file a civil rights action pursuant to 42 U.S.C. § 1983.") (internal footnote omitted). Mr. Guy spends considerable space in his brief arguing that a court cannot dismiss a § 1983 complaint under the PLRA for failure to exhaust because that is an affirmative defense and not a basis to dismiss at the pleading stage. (citing Jones v. Bock , 549 U.S. 199, 212, 127 S.Ct. 910, 919, 166 L.Ed.2d 798 (2007) ). We read the district court's dismissal for failure to exhaust as an alternative basis to its mootness decision. ("Further, the Court finds [Mr. Guy] did not exhaust administrative remedies, precluding [Mr. Guy's] civil rights action."). Even if the court improperly concluded that Mr. Guy failed to exhaust, that does not affect its mootness decision, and would, therefore, not require reversal. See W.R.A.P. 9.04 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court.").
III. Mr. Lampert and Ms. Tennant-Caine were entitled to qualified immunity
[¶16] Mr. Guy sought $120,000 from Mr. Lampert and Ms. Tennant-Caine in their individual capacities; as well as unspecified damages for "emotional distress, shame, humiliation, loss of enjoyment of life, and mental anguish," and "exemplary and punitive damages." In their motion to dismiss, Mr. Lampert and Ms. Tennant-Caine argued that they were entitled to qualified immunity. The district court concluded that, because it was dismissing Mr. Guy's complaint as moot, it did not need to reach the question of qualified immunity.
[¶17] On appeal, the Defendants concede that the district court's mootness decision did not dispose of Mr. Guy's claim for monetary relief. Nevertheless, they argue that we can affirm the district court's decision to dismiss Mr. Guy's damages claim because this Court may "affirm a district court's action on appeal if it is sustainable on any legal ground appearing in the record even if the legal ground or theory articulated by the district court is incorrect."
[¶18] Before we can address the merits of the issue, we must first determine if it is appropriate in this case for us to decide an issue that the district court did not directly address. Generally, we will not consider an argument for the first time on appeal. See, e.g. , Meiners , 2019 WY 39, ¶ 25 n.4, 438 P.3d at 1270 n.4. However, Mr. Lampert and Ms. Tennant-Caine raised the issue of qualified immunity, and Mr. Guy addressed qualified immunity in his response. This is not a case where there is no reviewable order in the record or where the district court deferred its decision on an issue. See generally Mantle v. North Star Energy & Construction LLC , 2019 WY 54, ¶¶ 20-24, 441 P.3d 841, 847-48 (Wyo. 2019). Rather, the district court recognized the Defendants' qualified immunity argument, but concluded, albeit erroneously, that its mootness decision disposed of the claim for monetary damages. We have repeatedly held that we may affirm a district court's ultimate decision on any basis appearing in the record, even if that basis was not relied upon by the district court in its decision. See, e.g. , Peterson v. Johnson , 46 Wyo. 473, 28 P.2d 487, 490 (1934) ("Counsel argue further that the preliminary injunction should not have been issued. It is evident, however, in so far as that injunction is concerned, that we could not reverse the case, if error was committed in issuing it, if the ultimate decision rendered herein is correct, for the error would then be without prejudice .") (citations omitted) (emphasis added); Heilig v. Wyo. Game & Fish Comm'n , 2003 WY 27, ¶ 8, 64 P.3d 734, 737 (Wyo. 2003). Given the procedural posture of this case, (i.e., the facts as alleged in Mr. Guy's complaint are presumed true), whether Defendants were entitled to qualified immunity is a purely legal question. See Abell , 870 P.2d at 367. Thus, we will address the Defendants' argument that they are entitled to qualified immunity.
*659 [¶19] "Qualified immunity protects government officials from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wyo. Guardianship Corp. , 2018 WY 114, ¶ 19, 428 P.3d at 433 (citations and quotation marks omitted). "To survive a motion to dismiss based on qualified immunity, a plaintiff must allege sufficient facts showing: (1) that the defendant's actions violated a constitutional right; and (2) that the right was clearly established at the time of the alleged misconduct." Id. (citations omitted).
[¶20] A court has the discretion to decide the "clearly established" prong first. See Pearson v. Callahan , 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). To overcome qualified immunity, the alleged right at issue must be "clearly established," such that it is "beyond debate." See, e.g. , Dist. of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018). "The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Hernandez v. Mesa , --- U.S. ----, 137 S.Ct. 2003, 2007, 198 L.Ed.2d 625 (2017) (citation and quotation marks omitted). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.' " Wesby , --- U.S. at ----, 138 S.Ct. at 589 (quoting Malley v. Briggs , 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ). To that end, the United States Supreme Court has emphasized the level of specificity a court must use to ascertain the alleged right at issue:
Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." Ashcroft v. al-Kidd , 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case . Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. , at 639, 107 S.Ct. 3034.
White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (emphasis added).
[¶21] We must first define the "right" at issue to determine if that right was clearly established at the time of the alleged constitutional violation. We turn to the allegations in Mr. Guy's complaint. He attempted to overcome qualified immunity by defining the "right" at issue in general terms:
49. At all relevant times, the right of Guy to freedom of religion was a clearly established legal principle that was well known to Lampert and Tennant-Caine.
50. At the time of the violations set forth herein, the prohibition against establishing or favoring one religion over another was a clearly established legal principle that was well known to Lampert and Tennant-Caine.
51. At the time of the violations set forth herein, the prohibition by which Guy was denied the same and equal treatment accorded to members of the WDOC Recognized Religions, and to the equal protection of the law was a clearly established principle that was well known to Lampert and Tennant-Caine.
(Emphasis added.) This type of generalization has been expressly rejected by the United States Supreme Court. See White , --- U.S. ----, 137 S.Ct. at 552. Mr. Guy's complaint focused on the Defendants' alleged refusal to allow him "to form a Humanist study group to meet on the same terms that Defendants authorize inmates of theistic religious traditions, and other religions, to meet; and Defendants' refusal to allow inmates to identify as Humanists for assignment purposes." Thus, we conclude that the "right" at issue is Humanism's status as a "religion" for purposes of the First Amendment. We will assume, without deciding, that Humanism is a "religion" for purposes of the First Amendment.
[¶22] Having defined the "right" at issue, we now turn to what authority a *660 court may consider to ascertain whether that "right" was "clearly established" at the time of Defendants' conduct. We begin by determining whether there is United States Supreme Court precedent on point. See Wesby , --- U.S. ----, 138 S.Ct. at 591 n.8. The law is not settled on whether a court may look to a lower tribunal to answer the question. Id. ("We have not yet decided what precedents-other than our own-qualify as controlling authority for purposes of qualified immunity.") (citing Reichle v. Howards , 566 U.S. 658, 665-66, 132 S.Ct. 2088, 2094, 182 L.Ed.2d 985 (2012) ). Nevertheless, even if we may look to courts other than the United States Supreme Court for guidance, those decisions must put the question "beyond debate." Wesby , --- U.S. at ----, 138 S.Ct. at 589 ; Brown v. Montoya , 662 F.3d 1152, 1171 (10th Cir. 2011) ("[F]or the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.") (citation omitted) (emphasis added).[6] To defeat qualified immunity, Mr. Guy must demonstrate that the question of whether Humanism is a religion, for First Amendment purposes, has been placed "beyond debate." We conclude that he failed to carry his burden.
[¶23] In response to Defendants' motion to dismiss, Mr. Guy argued that "[t]he essence of a qualified immunity claim is factual" and that whether a right was "clearly established ... is a factual determination." To the contrary, the United States Supreme Court has established the "point that the appealable issue is a purely legal one : whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." Mitchell v. Forsyth , 472 U.S. 511, 528 n.9, 105 S.Ct. 2806, 2816 n.9, 86 L.Ed.2d 411 (1985) (emphasis added).
[¶24] Mr. Guy attempts to prove that the right at issue was "clearly established" by citing Am. Humanist Ass'n , 63 F. Supp. 3d 1274, a case from the United States District Court for the District of Oregon. There, the district court denied the defendants' qualified immunity defense where the defendants had refused the inmate's request to form a "Humanist study group or an Atheist study group, or to recognize Humanism as a religious assignment." Id. at 1278. It relied on a footnote from Torcaso v. Watkins , 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), in which "the Supreme Court ... referred to 'Secular Humanism' as a religion." Am. Humanist Ass'n , 63 F. Supp. 3d at 1286 (citing Torcaso , 367 U.S. at 495 n.11, 81 S.Ct. at 1684 n.11 ). That single case does not represent the great weight of authority that has placed the question beyond debate, as demonstrated by the D.C. Circuit Court of Appeals' discussion:
The Court's statement in Torcaso does not stand for the proposition that humanism, no matter in what form and no matter how practiced, amounts to a religion under the First Amendment. The Court offered no test for determining what system of beliefs qualified as a "religion" under the First Amendment. The most one may read into the Torcaso footnote is the idea that a particular non-theistic group calling itself the "Fellowship of Humanity" qualified as a religious organization under California law. See Grove v. Mead Sch. Dist. No. 354 , 753 F.2d 1528, 1537 (9th Cir. 1985) (Canby, J., concurring) (quoting Malnak [v. Yogi ], 592 F.2d [197], 206, 212 [ (3d Cir. 1979) ] ). See also Alvarado v. City of San Jose , 94 F.3d 1223, 1228 & n.2 (9th Cir. 1996) (citing cases supporting the limited scope of *661 the Torcaso footnote); Peloza v. Capistrano Unified Sch. Dist. , 37 F.3d 517, 521 (9th Cir. 1994) ("[N]either the Supreme Court, nor this circuit, has ever held that evolutionism or secular humanism are 'religions' for Establishment Clause purposes.").
Kalka v. Hawk , 215 F.3d 90, 99 (D.C. Cir. 2000).
[¶25] We need not resolve whether Humanism is a recognized religion for First Amendment purposes. Rather, our only task is to determine whether "clearly established" law places the question "beyond debate." Because it does not, we conclude Mr. Lampert and Ms. Tennant-Caine were entitled to qualified immunity as to Mr. Guy's claim for monetary damages.
IV. Mr. Guy did not preserve his argument that the Defendants' certificate of service was invalid
[¶26] In a single sentence of his response to the motion to dismiss, Mr. Guy stated: "As a separate, procedural matter, Defendants' Motion and Memorandum have not been properly served on the Plaintiffs in accordance with the express provisions of the applicable Wyoming Uniform Rules of the District Courts." In a footnote, the district court declined to address Mr. Guy's assertion because he "fail[ed] to present a specific rule Defendants violated or any facts to support [his] allegation."
[¶27] On appeal, Mr. Guy attempts to augment his argument by citing to the certificate of service the Defendants attached to their motion to dismiss, which was signed by a paralegal rather than their attorney. Mr. Guy then appears to argue that this certificate of service violated W.R.C.P. 5(d)(1), which requires a party to attach a certificate of service to "[a]ny paper [filed] after the complaint," and Rule 302(a)(3) of the Uniform Rules for District Courts, which requires the attorney "for the party making service" to sign the certificate of service.
[¶28] Mr. Guy did not raise his argument that the service violated W.R.C.P. 5 below, and we therefore decline to address it here. See Meiners , 2019 WY 39, ¶ 25 n.4, 438 P.3d at 1270 n.4. With respect to the alleged violation of U.R.D.C. 302, Mr. Guy presents no argument other than a citation to the rule. He does not contend that the allegedly defective certificate caused him any prejudice, nor could he, as he received the WDOC's filings and responded to them without asserting that the service affected his ability to respond in a timely manner. See W.R.A.P. 9.04.[7]
V. Mr. Guy was not a "prevailing party" under 42 U.S.C. § 1988
[¶29] After the district court dismissed his complaint, Mr. Guy filed a motion to recover attorney's fees under 42 U.S.C. § 1988. Because it dismissed his complaint as moot, the district court concluded that Mr. Guy was not a "prevailing party."
[¶30] In a § 1983 case, a court may award reasonable attorney fees to the "prevailing party." 42 U.S.C. § 1988(b). Whether a litigant is a "prevailing party" is a question of law that we review de novo. Kansas Judicial Watch v. Stout , 653 F.3d 1230, 1235 (10th Cir. 2011) ; Morris v. CMS Oil & Gas Co. , 2010 WY 37, ¶ 36, 227 P.3d 325, 335 (Wyo. 2010). Mr. Guy argues that he is a prevailing party because he improved his position by the litigation in that the WDOC granted him the relief requested in his complaint via the executive order recognizing Humanism as a religion. The State asserts that Mr. Guy did not carry his burden of establishing prevailing party status because he did not show that his lawsuit was causally linked to the WDOC's executive order or that he "received any form of judicial relief on the merits of his claims."
[¶31] Mr. Guy relies on the "catalyst theory" which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."
*662 Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res. , 532 U.S. 598, 601, 121 S.Ct. 1835, 1838, 149 L.Ed.2d 855 (2001). Prior to the United States Supreme Court's decision in Buckhannon , nearly all federal courts of appeals recognized that a showing that the plaintiff's suit served as the catalyst for the defendant's remedial action qualified the plaintiff as a prevailing party. Id. ; see also, e.g. , MacLaird v. Werger , 723 F. Supp. 617, 618-19 (D. Wyo. 1989).
[¶32] In Buckhannon , the Court overturned "legions of federal-court decisions," id. at 628, 121 S.Ct. at 1853 (Ginsburg, J., dissenting), holding that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees[.]" Id. at 610, 121 S.Ct. at 1843. There, the plaintiff sought declaratory and injunctive relief against West Virginia, two of its agencies, and 18 individuals under the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA). Id. at 601, 121 S.Ct. at 1838. Less than a month after the federal district court denied the state's summary judgment motion, the state legislature repealed the statute challenged in the litigation. Id. at 624, 121 S.Ct. at 1850. The defendants moved to dismiss the case as moot, and the plaintiffs sought attorney's fees as the "prevailing party" under the FHAA, 42 U.S.C. § 3613(c)(2), and the ADA, 42 U.S.C. § 12205.[8] Id. at 624, 121 S.Ct. at 1850-51. The Court affirmed the judgment denying the plaintiff's motion for attorney's fees, holding the term "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id. at 600, 121 S.Ct. at 1838.
[¶33] Mr. Guy would have this Court ignore that holding and instead rely on state fee-shifting statutes. See Schaub v. Wilson , 969 P.2d 552, 561 (Wyo. 1998) (interpreting "prevailing party" in Wyo. Stat. Ann. § 1-14-124 ); Morris , 2010 WY 37, ¶¶ 35-46, 227 P.3d at 334-37 (interpreting "prevailing party" in Wyo. Stat. Ann. § 30-5-303(b) ). However, these cases do not control interpretation of "prevailing party" in 42 U.S.C. § 1988(b). Instead, this Court, "like the lower federal courts, [is] bound by the supremacy clause of the federal Constitution" to follow the United States Supreme Court's interpretation of section 1988. See Martin A. Schwartz & John E. Kirklin, Sec. 1983 Litig. Stat. Att'y Fees § 1.07 (4th ed. 2019-1 Supp.), Westlaw. It is the United States Supreme Court's "responsibility to say what a [federal] statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law." James v. City of Boise, Idaho , --- U.S. ----, 136 S.Ct. 685, 686, 193 L.Ed.2d 694 (2016) (per curiam) (reversing the Idaho Supreme Court's conclusion that it was not bound by the Supreme Court's interpretation of § 1988 ) (quoting Nitro-Lift Technologies, L.L.C. v. Howard , 568 U.S. 17, 20, 133 S.Ct. 500, 503, 184 L.Ed.2d 328 (2012) (per curiam)). Because the United States Supreme Court has decided the meaning of "prevailing party" in 42 U.S.C. § 1988, we are bound by that interpretation- Buckhannon governs.[9] Mr. Guy did not obtain a judgment on the merits, a court-ordered consent decree, or any other form of judicial relief. The WDOC's "voluntary change in conduct, although perhaps accomplishing what [Mr. Guy] sought to achieve by the lawsuit, lacks the necessary judicial imprimatur " to make him a prevailing party under the statute. Buckhannon , 532 U.S. at 605, 121 S.Ct. at 1840.
[¶34] Other cases Mr. Guy cites are distinguishable. For example, Balla v. Idaho , 677 F.3d 910, 914 (9th Cir. 2012), held that reasonable attorney's fees could be awarded when the plaintiffs' contempt motion quickly brought the defendants into compliance with an existing injunction, even though the court denied the contempt motion. However, there, the plaintiffs "had long ago won their injunction *663 ... and they did not have to win further judicial relief to get paid for their lawyers' work." Id. at 919-20. The court reasoned that Buckhannon "speaks to the case where there never has been judicially ordered relief," but not to cases where there has been judicial relief that may require additional monitoring and enforcement. Id. at 918. Mr. Guy's case is distinguishable, and according to Balla's reasoning, is controlled by Buckhannon because "there never has been judicially ordered relief."
[¶35] Likewise, Nat'l Rifle Ass'n of Am. v. City of Chicago, Ill. , 646 F.3d 992 (7th Cir. 2011), does not support Mr. Guy's position. There, the court held the plaintiffs qualified as the prevailing party despite repeal of ordinances that rendered the plaintiffs' case moot. Id. at 993-94. However, the repeal was a direct result of a United States Supreme Court decision holding that the Second Amendment applies to states and municipalities and reversing dismissal of the plaintiffs' claims. Id. In contrast to Buckhannon , the plaintiffs "achieved a decision that alter[ed] 'the legal relationship of the parties' " because the central issue in the litigation had been conclusively established. Id. at 994. The court concluded that "[b]y the time defendants bowed to the inevitable, plaintiffs had in hand a judgment of the Supreme Court that gave them everything they needed. If a favorable decision of the Supreme Court does not count as 'the necessary judicial imprimatur ' on the plaintiffs' position ..., what would?" Id. (citing Buckhannon , 532 U.S. at 605, 121 S.Ct. at 1840 ). Here, Mr. Guy has not obtained any favorable court decision.
[¶36] Other cases Mr. Guy cites precede Buckhannon , which overturned "legions of federal-court decisions" relying on the catalyst theory. Leroy v. City of Houston , 831 F.2d 576, 579 (5th Cir. 1987) ; Love v. Mayor, City of Cheyenne , 620 F.2d 235 (10th Cir. 1980) ; MacLaird , 723 F. Supp. 617 ; Texas State Teachers Ass'n v. Garland Indep. Sch. Dist. , 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). See also Skinner v. Uphoff , 324 F. Supp. 2d 1278 (D. Wyo. 2004) (awarding § 1988 attorney's fees after the court granted summary judgment in the plaintiff's favor); Silverman v. Villegas , 894 N.E.2d 249, 256 (Ind. App. 2008) (holding plaintiffs were prevailing parties under section 1988 because the court entered summary judgment in their favor on their state law claim that arose out of the common nucleus of operative fact implicated by their constitutional claims).
[¶37] Because the district court dismissed Mr. Guy's complaint as moot, and we conclude that Mr. Lampert and Ms. Tennant-Caine were entitled to qualified immunity, Mr. Guy has not obtained the "judicial imprimatur " necessary to qualify as the "prevailing party." We affirm the district court's denial of his attorney's fees.
CONCLUSION
[¶38] For the reasons discussed above, we affirm both of the district court's orders. The voluntary cessation exception to the mootness doctrine has not been adopted in Wyoming, and Mr. Lampert and Ms. Tennant-Caine were entitled to qualified immunity. Finally, Mr. Guy was not a "prevailing party" under 42 U.S.C. § 1988. Affirmed.

After the WDOC recognized Humanism as a religion, AHA chose not to appeal. As Mr. Guy recognizes in his brief in S-18-0263, the "Director's Executive Order ... granted the majority of the injunctive and declaratory relief sought by Guy only in Count II, and substantially all the relief sought by Plaintiff AHA." Thus, we refer only to Mr. Guy as the plaintiff and the appellant in this case.

In his complaint, Mr. Guy alleges: "Humanism adheres to a broad world view that includes a non-theistic view on the question of deities; an affirmative naturalistic outlook; an acceptance of reason, rational analysis, logic, and empiricism as the primary means of attaining truth; an affirmative recognition of ethical duties; and a strong commitment to human rights."

Mr. Guy also raised a third claim, in which he attempted to bring a "direct action" against the State of Wyoming and the WDOC "for violation of the Wyoming Constitution." However, he has abandoned that claim on appeal.

We have referred to the mootness doctrine as an aspect of standing. See Williams , 2017 WY 85, ¶ 15, 398 P.3d at 527 ("This doctrine represents the time element of standing by requiring that the interests of the parties which were originally sufficient to confer standing persist throughout the duration of the suit.") (citations omitted).

The closest exception we have to voluntary cessation is when the issue is capable of repetition yet evades review. See Operation Save America v. City of Jackson , 2012 WY 51, ¶ 23, 275 P.3d 438, 449 (Wyo. 2012). Under this exception, "two requirements must be met: First, the duration of the challenged action must be too short for completion of litigation prior to its cessation or expiration. Second, there must be a reasonable expectation that the same complaining party will be subjected to the same action again." Circuit Court of Eighth Judicial Dist. v. Lee Newspapers , 2014 WY 101, ¶ 15, 332 P.3d 523, 528 (Wyo. 2014) (citations and quotation marks omitted). Mr. Guy did not argue below and has not argued on appeal that this exception applied. See, e.g. , Meiners v. Meiners , 2019 WY 39, ¶ 25 n.4, 438 P.3d 1260, 1270 n.4 (Wyo. 2019).

We have previously said that "[a] clearly established right is one recognized by either the highest state court in the state where the case arose, a United States Court of Appeals, or the United States Supreme Court." Park Cnty. v. Cooney , 845 P.2d 346, 352 (Wyo. 1992) (citing Robinson v. Bibb , 840 F.2d 349, 351 (6th Cir. 1988) ). However, in Cooney , we failed to recognize that the Robinson court was itself unsure what constituted "clearly established law." Robinson , 840 F.2d at 351 ("[W]e have had no specific Supreme Court guidance in deciding when an issue becomes clearly established."). We do not need to resolve this question for purposes of this case. Mr. Guy has not cited to any case from this Court or the Tenth Circuit that would place the "right" at issue "beyond debate." As discussed further below, we are satisfied that, no matter what authority we look to, Mr. Guy has failed to overcome qualified immunity on the "clearly established" prong.

We take no position on whether the certificate of service violated either W.R.C.P. 5 or U.R.D.C. 302.

Although the case was not decided under 42 U.S.C. § 1988(b), the Court applied precedent interpreting 42 U.S.C. § 1988(b) and observed that it approaches these "nearly identical" civil rights fee-shifting provisions consistently. Id. at 603 n.4, 121 S.Ct. at 1839 n.4.

That is not to say that our interpretation of "prevailing party" in Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2019) and Wyo. Stat. Ann. § 30-5-303(b) (LexisNexis 2019) is no longer sound. State courts are the final arbiters of the meaning of state law.