SECOND DIVISION
March 27, 2007

No. 1-06-0791

TODD J. CHAPMAN and WENDI L. CHAPMAN,   )   Appeal from the
   )   Circuit Court of
    Plaintiffs-Counterdefendants-    )   Cook County.
    Appellants,   )
   )
        v.   )
   )
ROBERT S. ENGEL and LINDA R. ENGEL,   )
   )   Honorable
    Defendants-Counterplaintiffs-    )   Thomas Hogan,
    Appellees.   )   Judge Presiding.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

We are called on to construe a fee-shifting provision in a home purchase contract, no simple matter considering the way the bench trial concluded.

Each side claimed the other materially breached the contract. The trial court held neither one of them did, although the plaintiffs did get back the earnest money they sued for.

Plaintiffs contend they should be awarded attorney fees and costs because they were the "prevailing Party" as that term is used in the contract. The trial court held they were not entitled to fees and costs because they were not the prevailing parties. We affirm the trial court's conclusion, although our reason is not the same.

FACTS

The Chapmans entered into a real estate contract for the purchase of the Engels' home for $550,000. The Chapmans tendered $55,000 in earnest money to Coldwell Banker, the listing broker. The parties were scheduled to close on August 15, 2002. The Chapmans conducted a final walk-through of the property the morning before closing, as authorized by the contract. During the walk-through, the Chapmans noticed the house was not in the same condition as it had been when the contract was signed. The Chapmans requested either a credit or escrow of money so the house could be repaired. At the closing, the parties attempted to negotiate a resolution. The contract was terminated when the parties could not reach an agreement.

Following the termination of the contract, the Chapmans demanded the release of the earnest money. The Engels made their own claim to the earnest money, which remained in the Coldwell Banker account. On October 2, 2002, the Chapmans filed a lawsuit against the Engels. Count I of the complaint was a declaratory judgment action, which sought an order from the trial court declaring the contract was properly terminated, directing the Engels to release the Chapmans' earnest money and awarding the Chapmans their attorney fees and costs in bringing the suit. Count II of the complaint alleged the Engels breached the contract by not having the home in the same condition at closing

1-06-0791

as it was when the contract was signed.

The Engels filed a counterclaim, seeking recovery of the earnest money as liquidated damages for the Chapmans' alleged breach of contract. The Engels also sought an award of reasonable attorney fees and costs. While the litigation was pending, the Engels sold their house to a third party for $520,000.

On December 18, 2003, the Chapmans filed a motion for partial summary judgment, contending the Engels were entitled to only $30,000 of the earnest money--the difference between what the Engels eventually sold the house for and the amount the Chapmans agreed to pay. In response, the Engels contended they were entitled to the full $55,000 as liquidated damages. In their reply brief in support of summary judgment, the Chapmans contended the Engels could not recover liquidated damages because the contract did not contain a liquidated damages provision.

The trial court denied the Chapmans' motion, finding there were questions of fact precluding any dispositive ruling. The Engels were granted leave to file an amended counterclaim, which sought the recovery of actual damages in the event liquidated damages were unavailable.

Prior to trial, the Chapmans filed several motions *in limine*. Motion *in limine* #2 sought to bar the Engels from

presenting evidence and argument regarding liquidated damages. The trial court denied the Chapmans' motion *in limine*, but informed the Engels that they had to elect a remedy before trial. The Engels elected to pursue actual damages. As a result, on November 12, 2005, the trial court ordered the Engels to "immediately take all actions appropriate and necessary to cause Coldwell Banker to release [the Chapmans] $55,000 in earnest money." Following a bench trial, the court dismissed both the Chapmans' complaint and the Engels' counterclaim with prejudice.

On December 22, 2005, the Chapmans filed a petition for attorney fees and costs, requesting reimbursement for fees up to the day the trial court ordered the Engels to release the earnest money. The "attorney fees" provision in the contract signed by the parties provided for the payment of legal fees and costs to the prevailing party "in the event of default" by either party. Because the trial court ordered the release of the earnest money, the Chapmans contend they were the prevailing party in the litigation.

During a hearing on the motion for fees, the trial court noted it was "perplexed" by the Chapmans' position that they were the prevailing party. The trial court denied the Chapmans' motion, saying: "I do not think [the Chapmans] were the prevailing party as contemplated by the contract." The Chapmans

1-06-0791

appealed.

DECISION

Ordinarily, the losing party in a lawsuit cannot be required to pay attorney fees to the winning party. Saltiel v. Olsen, 85 Ill. 2d 484, 488, 426 N.E.2d 1204 (1981). But there is an exception to the rule: provisions in contracts for award of attorney fees will be enforced by the courts. Abdul-Karim v. First Federal Savings and Loan Association, 101 Ill. 2d 400, 411-12, 462 N.E.2d 488 (1984). These are "fee-shifting" provisions. Wildman, Harold, Allen and Dixon v. Gaylord, 317 Ill. App. 3d 590, 594, 740 N.E.2d 501 (2000).

Here, the home purchase contract entered into by the parties did contain a fee and costs provision:

> "In the event of default by Seller or Buyer,
> the Parties are free to pursue any legal
> remedies at law or in equity. The prevailing
> Party in litigation shall be entitled to
> collect reasonable attorney fees and costs
> from the losing Party as ordered by a court
> of competent jurisdiction."

Our decision in this case turns on the precise wording of the fee-shifting provision in the contract. There is no factual dispute. Our task is to interpret the contract, a question of

1-06-0791

law calling for <u>de novo</u> review of the trial court's decision.
<u>Erlenbush v. Largent</u>, 353 Ill. App. 3d 949, 952, 819 N.E.2d 1186
(2004); <u>Gallagher v. Lenart</u>, 367 Ill. App. 3d 293, 301, 854
N.E.2d 800 (2006). We may affirm the trial court's decision on
any basis supported by the record, regardless of whether the
trial court relied on that ground when it made its decision. See
<u>Home Insurance Co. v. Cincinnati Insurance Co.</u>, 213 Ill. 2d 307,
315, 821 N.E.2d 269 (2005).

We are required to strictly construe a contractual provision
for attorney fees. <u>Grossinger Motorcorp, Inc. v. American
National Bank and Trust</u>, 240 Ill. App. 3d 737, 752, 607 N.E.2d
1337 (1993). That is, we construe the fee-shifting provision "to
mean nothing more--but also nothing less--than the letter of the
text." <u>Erlenbush</u>, 353 Ill. App. 3d at 952. For example, we have
held a fee-shifting provision tied to an action to "enforce" a
lease does not apply in a declaratory judgment claim asking that
the parties' rights under the lease be declared. The reason?
Declaring rights is not the same as enforcing obligations.
<u>Powers v. Rockford Stop-N-Go, Inc.</u>, 326 Ill. App. 3d 511, 516,
761 N.E.2d 237 (2002); <u>Arrington v. Walter E. Heller
International Corp.</u>, 30 Ill. App. 3d 631, 642, 333 N.E.2d 50
(1975).

The battleground staked out by the parties at trial and in

1-06-0791

this court has to do with the question of whether the Chapmans were prevailing parties in the litigation. We see no need to reach that issue. The fee-shifting provision in the parties' contract requires a "default by Seller or Buyer" before the identity of the prevailing party makes any difference. That is the contract the parties entered into and that is the contract we must strictly construe. See <u>Grossinger Motorcorp, Inc.</u>, 240 Ill. App. 3d at 752.

Nothing in the Chapman-Engel home purchase contract defines or explains "default." However, a contract term is not ambiguous merely because it is undefined in a contract. <u>Hunt v. Farmers Insurance Exchange</u>, 357 Ill. App. 3d 1076, 1079, 831 N.E.2d 1100 (2005). "If an undefined term has a 'plain, ordinary, and popular meaning,' there is no ambiguity and the term should be enforced as written." <u>Hunt</u>, 357 Ill. App. 3d at 1079, quoting <u>Chatham Corp. v. Dann Insurance</u>, 351 Ill. App. 3d 353, 358, 812 N.E.2d 483 (2004).

The plain, ordinary, and popular meaning of the word "default" is: "The omission or failure to perform a legal or contractual duty." Black's Law Dictionary 428 (7th ed.1999). The term is not ambiguous. "Breach of contract" is defined as: "Violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's

promise." Black's Law Dictionary 182 (7th ed.1999). In light of the similarities between the definitions of "default" and "breach of contract," we find the terms have substantially the same meaning in this case.

Here, the trial court specifically found neither side breached the contract when it dismissed both the Chapmans' and the Engels' contract claims with prejudice after a bench trial. See Kostecki v. Dominick's Finer Foods, Inc. of Illinois, 361 Ill. App. 3d 362, 374, 836 N.E.2d 837 (2005) (when an involuntary dismissal is "with prejudice," the judgment is a final adjudication on the merits under Supreme Court Rule 273 (134 Ill. 2d R. 273)). The trial court's decision in this case may be logically inconsistent, but it is legally consistent, and that is acceptable. See Redmond v. Socha, 216 Ill. 2d 622, 650, 837 N.E.2d 883 (2005) ("no authority for the proposition that a verdict or verdicts in a civil case must be without any conceivable flaw in logic, only that they must be legally consistent.")

The trial court's judgment, in effect, determined neither party defaulted under the contract, a necessary condition for the fee-shifting provision to apply. Not only was the required triggering event in the fee-shifting provision not proved in this case, the trial court specifically found it never happened. In

fact, the trial court correctly observed in denying the Chapmans' fee petition, it believed "everyone was operating under the assumption that in order for the Chapmans to succeed on their claim for attorney fees, they needed a determination that there was or there had been a material breach."

Because neither party breached the contract, we find neither the Chapmans nor the Engels defaulted under the contract. Since we are bound by the rules of strict construction, we find the fee-shifting provision did not apply in this case. Accordingly, we need not consider whether the Chapmans were the "prevailing Party" under the fee-shifting provision.

CONCLUSION

We affirm the trial court's judgment.

Affirmed.

HOFFMAN, and HALL, JJ., concur.