# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 46

### OCTOBER TERM, A.D. 2020

### March 25, 2021

ADAM BRUCE LEVY,

Appellant
(Plaintiff),

v.

ASPEN S, LLC, a Wyoming limited
liability company; KELVIN H. STIRN
and NANCY J. STIRN,

Appellees
(Defendants).

S-20-0164

*Appeal from the District Court of Teton County*
The Honorable Timothy C. Day, Judge

*Representing Appellant:*
    Paula A. Fleck, Holland & Hart LLP, Jackson, Wyoming.

*Representing Appellees:*
    Erika M. Nash, Aaron J. Lyttle, Long Reimer Winegar LLP, Jackson, Wyoming.
    Argument by Ms. Nash.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Adam Bruce Levy brought a declaratory judgment action against Aspen S, LLC and Kelvin H. and Nancy J. Stirn (hereinafter collectively referred to as the Stirns) asking the district court to declare he had the right to install underground fiber optic cable within a utility easement located on the Stirns' property.  He also requested his attorney fees and costs under the easement's fee-shifting provision.  Four months later, the Stirns agreed Mr. Levy had the right to install the fiber optic cable in the easement and moved for judgment on the pleadings, claiming Mr. Levy's declaratory judgment action was moot because there was no longer a justiciable controversy.  The district court dismissed the declaratory judgment action as moot and denied Mr. Levy's request for attorney fees and costs.  Mr. Levy appealed.  He challenges only the district court's denial of his attorney fees and costs. We reverse and remand.

## ISSUE

[¶2]     We restate the issue as follows:

Did the district court err in concluding Mr. Levy was not entitled to his attorney fees and costs under the easement's fee-shifting provision?

## FACTS

[¶3]     Mr. Levy owns property in Teton County, Wyoming, which is benefitted by a 30-foot wide "access and underground utility easement" located on the Stirns' property.  In July 2019, Mr. Levy contacted Silver Star Communications (Silver Star) for the installation of underground fiber optic cable within the easement to facilitate telephone service and internet access to his property.  Although not clear from the record, it appears Silver Star attempted to access the easement area but the Stirns refused to allow access unless they were paid and provided free internet service, including free installation of the "trunk line" and "drop lines" to their property.  Silver Star communicated the Stirns' demands to Mr. Levy.

[¶4]     The next month, Mr. Levy hired a surveyor to determine the easement's exact location for purposes of installing the cable.  The Stirns ordered the surveyor to leave the easement area, and Ms. Stirn told the surveyor she did not recognize the easement and would not allow installation without payment.  Mr. Levy met with the Stirns and informed them the easement gave him the right to install underground utilities, including fiber optic cable.  The Stirns disagreed and again refused to agree to the installation unless they were guaranteed free internet service.  In September 2019, Mr. Levy spoke with Silver Star about the status of the cable installation; Silver Star informed him Mr. Stirn had called and reiterated the Stirns' demand for free internet access before they would allow the cable to be installed.  The next month, Mr. Levy again attempted to have the easement surveyed;

1

the Stirns again ejected the surveyor from the easement area. Mr. Levy made one last attempt to persuade the Stirns to agree to the installation; still, the Stirns refused to agree to the installation.

[¶5] Several months later, in January 2020, Mr. Levy filed a complaint against the Stirns seeking (1) a declaration that the easement allows for the installation of underground fiber optic cable; and (2) his attorney fees and costs under the easement's fee-shifting provision. Four months later, the Stirns signed and recorded "Affidavits Affecting Title" in the Teton County Clerk's Office in which they agreed the easement "includes the installation, construction and maintenance of underground fiber optic telecommunication wire/cable located within the burdened area of the Servient Estate [(the Stirns' property)] for the benefit of the Dominant Estate [(Mr. Levy's property)]." A week later, they filed a motion for judgment on the pleadings under Rule 12(c) of the Wyoming Rules of Civil Procedure (W.R.C.P.) in the district court. They claimed Mr. Levy's complaint should be dismissed for lack of subject matter jurisdiction because there was no longer a justiciable controversy due to their filing of the "Affidavits Affecting Title," which acknowledged Mr. Levy had the right to install fiber optic cable in the easement. Mr. Levy agreed his claim for declaratory relief was rendered moot by the "Affidavits Affecting Title." However, he argued his claim for attorney fees and costs remained a justiciable controversy and he was entitled to his fees and costs under the easement's fee-shifting provision.

[¶6] The district court concluded the "Affidavits Affecting Title" established the Stirns no longer contested that the easement allowed for the installation of fiber optic cable and rendered Mr. Levy's declaratory judgment action moot. As a result, it dismissed the declaratory judgment action for lack of subject matter jurisdiction. The court decided Mr. Levy was not entitled to his attorney fees and costs. Mr. Levy timely appealed.

## STANDARD OF REVIEW

[¶7] Mr. Levy does not challenge the district court's dismissal of his declaratory judgment action as moot. He disputes only the district court's denial of his request for attorney fees and costs under the easement's fee-shifting provision. We review de novo a district court's interpretation of an easement, including its fee-shifting provision. *See Douglas v. Jackson Hole Land Tr.*, 2020 WY 69, ¶ 12, 464 P.3d 1223, 1227 (Wyo. 2020) ("We review easements as we do questions of contract interpretation." (citing *Davison v. Wyo. Game & Fish Comm'n,* 2010 WY 121, ¶ 9, 238 P.3d 556, 560 (Wyo. 2010)); *Larson v. Burton Constr., Inc.*, 2018 WY 74, ¶ 16, 421 P.3d 538, 544 (Wyo. 2018) ("Contract interpretation presents questions of law which we review de novo.").[1]

---

[1] Although neither party has argued otherwise, the district court had jurisdiction to decide the attorney fees issue even though it concluded it did not have subject matter jurisdiction over Mr. Levy's claim for declaratory relief. Mr. Levy brought a separate claim for his attorney fees and costs, and attorney fee awards are collateral to the merits of a case. *See Lokey v. Irwin*, 2016 WY 50, ¶ 14, 374 P.3d 311, 316 (Wyo. 2016) (concluding "the award of attorney fees is collateral to the merits of a case, and therefore

[¶8] In interpreting an easement, we apply our general rules of contract interpretation. *Douglas*, ¶ 20, 464 P.3d at 1230 (quoting *Pennant Serv. Co., Inc. v. True Oil Co., LLC,* 2011 WY 40, ¶ 24, 249 P.3d 698, 708-09 (Wyo. 2011)). *See also, Gayhart v. Corsi*, 2020 WY 58, ¶ 15, 462 P.3d 904, 909 (Wyo. 2020) ("The principles of contract construction apply to construction of an easement." (quoting *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 9, 100 P.3d 380, 383-84 (Wyo. 2004)). "[W]e seek to determine the intent of the parties to the easement . . . and begin by attempting to glean the meaning of the easement from its language." *Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177-78 (Wyo. 2003). Unless the easement is ambiguous, its "'language . . . expresses and controls the intent of the parties.'" *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 33, 458 P.3d 832, 841 (Wyo. 2020) (quoting *State v. Pennzoil Co.*, 752 P.2d 975, 978 (Wyo. 1988)). An easement "is ambiguous if it conveys a 'double or obscure meaning.'" *Douglas*, ¶ 14, 464 P.3d at 1228 (quoting *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 23, 226 P.3d 889, 905 (Wyo. 2010)) (other citation omitted). The parties' disagreement over the meaning of an easement does not create an ambiguity. *Principal Life Ins. Co. v. Summit Well Serv., Inc.*, 2002 WY 172, ¶ 19, 57 P.3d 1257, 1262 (Wyo. 2002) (citations omitted).

## DISCUSSION

[¶9] "'Wyoming generally subscribes to the American rule regarding the recovery of attorney fees, under which . . . each party pays his or her own fees. A prevailing party may, however, be reimbursed for attorney fees when provided for by contract or statute.'" *Douglas*, ¶ 20, 464 P.3d at 1229-30 (quoting *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012)) (other citations omitted). In this case, Mr. Levy seeks his attorney fees and costs under the easement's fee-shifting provision, which states:

> In any proceeding to enforce any of the terms and conditions in this instrument, the prevailing party shall be entitled to recover all costs incurred in connection therewith, including reasonable attorney's fees, whether suit is brought or not.

[¶10] The district court decided Mr. Levy was not entitled to his attorney fees and costs under this provision because (1) his declaratory judgment action was not a "proceeding to enforce" and (2) Mr. Levy was not the "prevailing party." We address each in turn.

### 1. *"Proceeding to Enforce"*

---

within a court's jurisdiction, even after the court has determined that it lacks jurisdiction of the underlying claim" (citation omitted)), *overruled on other grounds by Essex Holding, LLC v. Basic Props., Inc.*, 2018 WY 111, ¶¶ 34, 40, 427 P.3d 718, 721 (Wyo. 2018).

[¶11] The district court decided Mr. Levy's declaratory judgment action was not a "proceeding to enforce" because it sought only an interpretation of the easement's terms. In so deciding, the court relied on our recent decision in *Douglas*.

[¶12] Mr. Levy argues the district court erred in determining his declaratory judgment action was not a "proceeding to enforce." He claims under the plain meaning of the phrase, he brought a "proceeding to enforce" because he engaged in a "course of action" to "compel [the Stirns'] obedience to" the easement's terms. According to him:

> [He] repeatedly sought to enforce the [easement's] terms informally, by explaining to [the Stirns] that he has a right to install the cable and requesting [they] stop interfering with his attempts to do so. Nonetheless, [the Stirns] repeatedly interfered with [his] rights under the [e]asement by preventing his surveyors and contractors from accessing the [e]asement. [He] again confronted [the Stirns] in an effort to get them to comply with the [e]asement they had signed. Only after [they] rebuffed these informal enforcement efforts did [he] file suit, seeking a declaratory judgment that he has a right to install cable in the [e]asement.

(Record citations omitted). Mr. Levy further maintains his declaratory judgment action was functionally equivalent to an enforcement action because a declaratory judgment in his favor would have compelled the Stirns to allow him to install the fiber optic cable.

[¶13] The easement does not define the phrase "proceeding to enforce." The plain meaning of "proceeding" is a "legal action," "procedure," or "transaction." https://www.merriam-webster.com/dictionary/proceeding. Black's Law Dictionary defines it as, *inter alia*, "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and "[a]ny procedural means for seeking redress from a tribunal or agency." *Proceeding*, Black's Law Dictionary (11th ed. 2019). Although the plain meaning of "proceeding" includes a lawsuit, a lawsuit is not required for a party to be entitled to his fees under the easement's fee-shifting provision because it allows fees "whether suit is brought or not." We need not decide, however, what type of "non-lawsuit" proceedings are contemplated by the provision because Mr. Levy brought a lawsuit. The question is whether his lawsuit sought to "enforce" the terms and conditions of the easement.

[¶14] The plain meaning of "enforce" is "strengthen," "to urge with energy," or "constrain, compel." https://www.merriam-webster.com/dictionary/enforce. Black's Law Dictionary defines it as "[t]o give force or effect to (a law, etc.); to compel obedience to." *Enforce*, Black's Law Dictionary (11th ed. 2019). In this case, Mr. Levy brought the declaratory judgment action after the Stirns violated the easement by refusing to allow him

4

to install underground fiber optic cable in the easement and by seeking to be compensated before allowing the installation. By bringing the declaratory judgment action, he sought to "compel" their compliance with the easement with a declaration from the court that he had the right to install underground fiber optic cable in the easement. Under these circumstances, his declaratory judgment action sought to "enforce" the terms of the easement.

[¶15] The district court relied on our decision in *Douglas* in determining Mr. Levy's declaratory judgment action was not a "proceeding to enforce." Ms. Douglas acquired property in Teton County which was subject to a conservation easement held by Jackson Hole Land Trust (JHLT). *Douglas*, ¶¶ 1, 3, 464 P.3d at 1225. The easement limited the amount of "Site Development" that could occur on Ms. Douglas' property and defined "Site Development" to include "any area of [her property] . . . covered by . . . driveways[.]" *Id.*, ¶ 6, 464 P.3d at 1226. Ms. Douglas filed a declaratory judgment action against JHLT seeking a declaration that an existing accessway on her property, which was constructed by her predecessor-in-interest, constituted a "road," rather than a "driveway," and therefore did not constitute "Site Development" subject to the easement's development limitation. *Id.*, ¶¶ 3, 7, 464 P.3d at 1225-26. The district court found in favor of JHLT, concluding the accessway was a "driveway." *Id.*, ¶ 8, 464 P.3d at 1226. However, it denied JHLT's request for attorney fees and costs under the easement's fee-shifting provision, which allowed a party to "recover the costs of enforcement of any of the terms of this Easement, including reasonable attorneys' fees . . . ." *Id.*, ¶¶ 7, 9, 21, 464 P.3d at 1226-27, 1230. The court concluded the easement's fee-shifting provision allowed for the recovery of attorney fees "'to remedy a violation of the easement.'" *Id.*, ¶ 9, 464 P.3d at 1227. It found "'there [had] been no violation'" of the easement "because Ms. Douglas instituted her declaratory judgment action before 'develop[ing] her property in a manner that could be deemed a violation.'" *Id.* Instead, the court decided, "the declaratory judgment action merely sought 'interpretation of [the] terms of the easement.'" *Id.*

[¶16] We affirmed the district court's denial of JHLT's request for fees. *Id.*, ¶¶ 23-24, 464 P.3d at 1230. Defining "enforcement" as "'[t]he act or process of compelling compliance with . . . [an] agreement,'" we held Ms. Douglas' declaratory judgment action did not seek to compel compliance with the easement. *Id.*, ¶ 22, 464 P.3d at 1230 (quoting *Enforcement*, Black's Law Dictionary (11th ed. 2019)). We explained:

> Ms. Douglas does not request an order compelling any particular action, nor does JHLT request an order compelling her to do or refrain from doing something. Instead, the parties merely seek an interpretation of the agreement. *See Chapman v. Engel*, 372 Ill.App.3d 84, 310 Ill. Dec. 6, 865 N.E.2d 330, 333 (2007) ("[A] fee-shifting provision tied to an action to 'enforce' a lease does not apply in a declaratory judgment claim asking that the parties' rights under the lease be declared.

5

> The reason? Declaring rights is not the same as enforcing obligations."). Had the contracting parties intended the costs and fees provision of the agreement to apply to an action seeking an interpretation of any of the terms of the agreement, they easily could have said so. They did not.

*Id.* Importantly, however, we did not hold that a prevailing party in a declaratory judgment action is never entitled to his fees and costs under an applicable fee-shifting provision. *Id.*, ¶ 23, 464 P.3d at 1230. Rather, we held whether a fee-shifting provision applies in a particular case depends on the circumstances. *Id.* ("We merely hold that this fee-shifting provision does not apply to the circumstances at issue here.") (citation omitted).

[¶17] The circumstances of this case are different from those in *Douglas*. There was no violation of the easement in *Douglas*. As a result, neither Ms. Douglas nor JHLT sought to compel the other to refrain from violating the easement. In contrast, the Stirns interfered with the easement by refusing to allow installation of the fiber optic cable without payment. Mr. Levy brought his declaratory judgment action to compel them to cease their offending conduct. While he did not explicitly seek an order from the district court to "compel" the Stirns to refrain from violating the easement, he did so implicitly by setting forth in his complaint their refusal to allow him to install fiber optic cable in the easement and seeking a court order declaring he had the right to do so. He requested more than an interpretation of the easement; he sought to compel the Stirns' compliance with the easement.

[¶18] This case is more analogous to *Fletcher v. Lone Mtn. Road Ass'n (Fletcher II)*, 452 P.3d 802 (Idaho 2019). The Fletchers owned a lot in a subdivision subject to covenants, conditions, and restrictions (CC&Rs). *Fletcher II,* 452 P.3d at 805; *Fletcher v. Lone Mtn. Road Ass'n (Fletcher I)*, 396 P.3d 1229, 1232 (Idaho 2017). A private gravel and dirt road ran through the subdivision. *Fletcher II*, 452 P.3d at 805; *Fletcher I*, 396 P.3d at 1231-32. The CC&Rs stated the road was to be maintained by the lot owners but allowed the owners to form a Community Association to address the road's maintenance. *Fletcher I*, 396 P.3d at 1232, 1238. Nine lot owners formed an association to address the road's maintenance but failed to form it in compliance with the CC&Rs. *Id.* When the Fletchers began oiling and applying asphalt grindings on part of the road to control the dust, the association hired contractors to cover the asphalt grindings with gravel and demanded the Fletchers stop oiling the road. *Fletcher II*, 452 P.3d at 805; *Fletcher I*, 396 P.3d at 1232. In response, the Fletchers brought a declaratory judgment action against the association, seeking, among other things, a declaration that the association has no right to maintain the road or to obtain involuntary contributions from the lot owners for past maintenance expenditures because it had not been formed in compliance with the CC&Rs. *Fletcher II*, 452 P.3d at 805; *Fletcher I*, 396 P.3d at 1232, 1238. The Fletchers obtained the requested relief and moved for attorney fees under the CC&Rs, which gave any lot owner "the right *to enforce, by any proceeding at law or in equity*, [the CC&Rs] . . . and in such action shall be entitled to recover costs and reasonable attorneys' fees as are ordered by the Court." *Fletcher II*, 452

6

P.3d at 805 (emphasis added). The district court denied the Fletchers' request for fees, concluding that even though they were the prevailing party, their declaratory judgment action was not the type of enforcement action contemplated by the CC&Rs. *Fletcher II*, 452 P.3d at 806. The Idaho Supreme Court reversed. *Id.* at 809. It concluded the Fletchers were entitled to their attorney fees because they had brought the declaratory judgment action to enforce the CC&Rs and prevent the association from maintaining the road in violation of the CC&Rs. *Id.* at 806. It explained:

> [T]he Fletchers brought this declaratory judgment action in direct response to the [a]ssociation's efforts to maintain [the road] in a manner that was inconsistent with the CC&Rs. At its core, the action was brought to require strict compliance with the unambiguous terms of the CC&Rs and make it clear that the [a]ssociation has no authority to maintain the road and . . . no authority to demand contributions from the Fletchers or other lot owners for past maintenance expenditures.

*Fletcher II*, 452 P.3d at 807-08.

[¶19] Similarly, Mr. Levy brought the declaratory judgment action in response to the Stirns' efforts to prevent him from installing underground fiber optic cable within the easement, which was inconsistent with the easement's terms. "At its core," Mr. Levy brought the action to require the Stirns' compliance with the easement and "make it clear" they did not have the authority to prevent him from installing fiber optic cable within the easement or to demand payment before installation.

[¶20] Mr. Levy's declaratory judgment action in this case was a "proceeding to enforce" the easement's terms.

### 2. *"Prevailing Party"*

[¶21] The district court concluded Mr. Levy was not a "prevailing party" under the easement's fee-shifting provision because his suit was dismissed for lack of subject matter jurisdiction. Mr. Levy argues he was the "prevailing party" under the ordinary meaning of "prevail," which means "[t]o be greater in strength or influence; triumph." According to him, he "triumphed" because he successfully overcame the Stirns' opposition to and interference with the easement's terms. And, because the fee-shifting provision applies "whether suit is brought or not," he argues it is immaterial that he obtained their compliance through their voluntary, albeit belated, acknowledgement of his right to install the fiber optic cable in the easement.

[¶22] The easement does not define the term "prevailing party." As Mr. Levy argues, the ordinary meaning of "prevail" is to "triumph." https://www.merriam-

7

webster.com/dictionary/prevail. Black's Law Dictionary defines it as "to obtain the relief sought in an action; to win a lawsuit." *Prevail*, Black's Law Dictionary (11th ed. 2019). "We have defined 'prevailing party' for purposes of awarding costs of litigation as one who 'improves his or her position by the litigation.'" *Ultra Res., Inc.*, ¶ 152, 226 P.3d at 936 (quoting *Schaub v. Wilson*, 969 P.2d 552, 561 (Wyo. 1998)).

[¶23] Looking to "the litigation as a whole," Mr. Levy was the "prevailing party" because he improved his position by filing the declaratory judgment action. *Id.* ("looking at the litigation as a whole" to decide whether plaintiffs were the "prevailing party" under the Wyoming Royalty Payment Act). *See also, Acorn v. Moncecchi*, 2017 WY 83, ¶ 12, 397 P.3d 205, 209 (Wyo. 2017) (for purposes of awarding costs under W.R.C.P. 54(d)(1), "[t]he case must be viewed as a whole to determine who was the 'prevailing party'") (citations and quotation marks omitted). Prior to filing the action, the Stirns refused Mr. Levy's efforts to install underground fiber optic cable within the easement and demanded payment. Four months after filing the action, the Stirns acknowledged he had the right to install the cable and to do so without compensating them. Mr. Levy also "triumphed" by obtaining the Stirns' agreement that the easement allowed for the installation of underground fiber optic cable. Moreover, while Mr. Levy did not formally "obtain the relief [he] sought," he effectively did so.

[¶24] The district court rejected any reliance on the definition of a prevailing party as "one who improves his or her position by the litigation." It equated that definition with the catalyst theory, which "'posits that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" *Guy v. Wyo. Dep't of Corr. by & through Lampert*, 2019 WY 69, ¶ 31, 444 P.3d 652, 661-62 (Wyo. 2019), *cert. denied sub nom. Guy v. Lampert*, 140 S. Ct. 1295, 206 L.Ed.2d 375 (2020) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601, 121 S. Ct. 1835, 1838, 149 L.Ed.2d 855 (2001)). Relying on *Guy*, the district court concluded the catalyst theory was no longer recognized in Wyoming. The court was mistaken.

[¶25] *Guy* involved whether the plaintiff was a "prevailing party" under 42 U.S.C. § 1988(b). *Guy*, ¶¶ 29-30, 444 P.3d at 661. Because a federal statute was involved, we were bound under the Supremacy Clause of the United States Constitution to follow the Supreme Court's interpretation of "prevailing party" in § 1988(b), including its holding in *Buckhannon* that "the term 'prevailing party' does not include 'a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" *Id.*, ¶¶ 32-33 & n.8; 444 P.3d at 662 & n.8 (quoting *Buckhannon*, 532 U.S. at 600, 121 S. Ct. at 1838). Unlike in *Guy*, we are not bound by *Buckhannon* in this case because we are not interpreting a federal statute, but rather a private easement. The interpretation of a private easement, like a private contract, is a matter of state law. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109

S. Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) ("[T]he interpretation of private contracts is ordinarily a question of state law, which [the United States Supreme] Court does not sit to review.") (citation omitted). Moreover, *Guy* did not overrule our precedent defining a "prevailing party" as "one who improves his or her position by the litigation" for purposes of state fee-shifting statutes. *Guy*, ¶ 33 & n.9, 444 P.3d at 662 & n.9 (noting that even though *Buckhannon* governed the interpretation of § 1988(b), "[t]hat is not to say that our interpretation of 'prevailing party' in Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2019) and Wyo. Stat. Ann. § 30-5-303(b) (LexisNexis 2019) is no longer sound. State courts are the final arbiters of the meaning of state law.").

[¶26] The district court also interpreted "prevailing party" to require judicial relief. The Stirns agree with this interpretation, arguing "prevailing party" is a legal term of art requiring the party to have received a judgment on the merits. Mr. Levy, they say, did not receive a judgment on the merits because the declaratory judgment action was dismissed for lack of subject matter jurisdiction.

[¶27] The easement's fee-shifting provision allows for an award of attorney fees to the prevailing party in an enforcement action "whether suit is brought or not." Clearly, the parties did not intend to require a party to obtain judicial relief to be considered the "prevailing party." If we were to interpret the provision as only allowing an award of fees to those who obtain judicial relief, we would effectively render the phrase "whether suit is brought or not" meaningless. We avoid such interpretations. *Douglas*, ¶ 14, 464 P.3d at 1228 ("We interpret [an easement] 'as a whole and read each provision in light of the others to find the plain meaning. We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless.'" (quoting *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016)) (other citations omitted).

[¶28] The district court decided the phrase "whether suit is brought or not" was irrelevant because Mr. Levy brought suit. However, as explained above, under its plain terms, a "prevailing party" need not obtain judicial relief even if he does bring suit. All that is required is that he "improve his . . . position by the litigation," "triumph," or otherwise "obtain the relief sought." Mr. Levy accomplished all of the above.

[¶29] In any event, the reason Mr. Levy did not obtain a judgment in his favor is because the Stirns filed an improper motion for judgment on the pleadings. A judgment on the pleadings is only "'appropriate *if all material allegations of fact are admitted in the pleadings* and only questions of law remain.'" *Newport Int'l Univ., Inc. v. Wyo. Dep't of Educ.*, 2008 WY 72, ¶ 12, 186 P.3d 382, 386 (Wyo. 2008) (emphasis added) (quoting *Box L Corp. v. Teton Cnty. ex rel. Bd. of Cnty. Comm'rs of Teton Cnty.*, 2004 WY 75, ¶ 2, 92 P.3d 811, 813 (Wyo. 2004)). The Stirns did not admit all material allegations of fact in their answer. Notably, they denied Mr. Levy's assertion that the easement did not require him to pay for the installation of fiber optic cable. This denial belies the Stirns' claim in

this appeal that "[Mr.] Levy filed a declaratory judgment action to confirm an *uncontested* interpretation of the [e]asement." (Emphasis added).

[¶30] By filing their "Affidavits Affecting Title," the Stirns essentially confessed judgment in favor of Mr. Levy under Wyo. Stat. Ann. § 1-16-201 (LexisNexis 2019) ("A person indebted or against whom a cause of action exists, may personally appear in a court of competent jurisdiction and with the assent of the creditor or person having such cause of action, confess judgment, whereupon judgment shall be entered accordingly."). Had they properly filed a motion to confess judgment, Mr. Levy would have received judicial relief and a judgment in his favor on the merits.

[¶31] Mr. Levy was the "prevailing party" under the easement's fee-shifting provision.

## CONCLUSION

[¶32] The district court erred in concluding Mr. Levy was not entitled to his attorney fees and costs under the easement's fee-shifting provision. We reverse and remand to the district court for proceedings consistent with this opinion. Because Mr. Levy is entitled to his attorney fees and costs under the easement's fee-shifting provision, he is also entitled to the attorney fees and costs he incurred in this appeal. *Kinstler v. RTB South Greeley, Ltd., LLC*, 2007 WY 98, ¶ 13, 160 P.3d 1125, 1129 (Wyo. 2007) ("Where a contract allows the award of attorney's fees, that includes fees incurred on appeal."); *DeWitt v. Balben*, 718 P.2d 854, 864 (Wyo. 1986) ("[I]f attorney's fees are expressly authorized by contract or statute, such provision also applies to fees incurred at the appellate level."). We will determine the appropriate amount of appellate fees and costs after Mr. Levy submits the proper documentation. *See Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 953 (Wyo. 2000) ("Generally, the appellate court, rather than the trial court, determines the proper amount of fees to be awarded for the legal work on appeal.") (citations omitted).