# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 84

APRIL TERM, A.D. 2023

August 24, 2023

DARYL A. HENSEL,

Appellant
(Respondent),

v.

S-23-0028

DAPCPA RPO LLC,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
Cassie Craven, Longhorn Law LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Jeffrey S. Pope, Isaac N. Sutphin, Holland & Hart LLP, Cheyenne, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Daryl A. Hensel appeals from the district court's award of $21,643.65 in attorney fees and costs to DAPCPA RPO LLC (DAPCPA RPO).  We affirm.

## ISSUES

[¶2]    Mr. Hensel raises two issues which we re-state as follows:

    1.      Did the district court err by concluding the attorney fee-shifting provision of the relevant contracts allowed for an award of attorney fees and costs to DAPCPA RPO?

    2.      Did the district court abuse its discretion by awarding attorney fees and costs to DAPCPA RPO?

## FACTS

[¶3]    In January 2019, DAPCPA, a full-service public accounting firm, purchased the goodwill, clients, and personal property of RPO Associates CPAs, LLC (RPO) pursuant to a Purchase and Sale Agreement (PSA) and formed DAPCPA RPO.  At the time of the purchase, Mr. Hensel, a certified public accountant, was a minority owner and employee of RPO and Maria Sanchez, an accredited tax preparer, was RPO's office manager.  Relevant here, the PSA contained a non-compete provision in which Mr. Hensel agreed "not to directly or indirectly solicit or provide any services" to any former RPO client for a period of five years unless pursuant to a contract and for the direct benefit of DAPCPA RPO.  In the event he breached this provision, Mr. Hensel agreed to pay DAPCPA RPO money damages for each client he improperly solicited or served.  The PSA also required Mr. Hensel to notify DAPCPA RPO within ten days if he violated the non-compete provision or pay DAPCPA RPO $5,000 for each time he failed to give notification.

[¶4]    Mr. Hensel and Ms. Sanchez accepted employment with DAPCPA RPO.  As a condition of his employment with DAPCPA RPO, Mr. Hensel executed a "Covenant Not to Solicit/Accept" (hereinafter "Covenant Not to Solicit"), in which he agreed "not to directly or indirectly" solicit or provide accounting services for any of DAPCPA RPO's clients for two years after leaving DAPCPA RPO's employ and to notify DAPCPA RPO of a breach within ten days.  Similar to the PSA, he agreed to pay DAPCPA RPO money damages for each client he improperly solicited or served and $5,000 for each failure to notify.

[¶5]    Soon after starting their employment with DAPCPA RPO, Mr. Hensel and Ms. Sanchez began forming their own accounting firms, including searching for and obtaining office space for their new firms and ordering business cards.  Upon learning of these activities, DAPCPA RPO terminated their employment.  Subsequently, Mr. Hensel formed

1

"Daryl A. Hensel, CPA, LLC," and Ms. Sanchez created "Best Accounting Solutions LLC" (BAS). Through his new firm, Mr. Hensel provided accounting services to former RPO clients and to DAPCPA RPO clients; he also referred former RPO clients and DAPCPA RPO clients to Ms. Sanchez/BAS for accounting services. He did not report any of these services or referrals to DAPCPA RPO.

[¶6] DAPCPA RPO filed suit against Mr. Hensel, Ms. Sanchez, and BAS. It alleged the following claims against Mr. Hensel: (1) breach of the PSA's non-compete provision; (2) breach of the Covenant Not to Solicit; (3) breach of the implied covenant of good faith and fair dealing; (4) conversion; (5) intentional misrepresentation; (6) tortious interference with a business expectancy; and (7) slander. DAPCPA RPO asserted claims of conversion, tortious interference with a contract, slander, and tortious interference with a business expectancy against Ms. Sanchez and claims of conversion and tortious interference with a contract against BAS. It also sought a preliminary injunction against both Mr. Hensel and Ms. Sanchez. Mr. Hensel stipulated to the district court's entry of a preliminary injunction, which enjoined him from directly or indirectly soliciting and providing any services to former RPO clients, required him to report to DAPCPA RPO any services performed for former RPO clients, and enjoined him from contacting any DAPCPA RPO clients. DAPCPA RPO eventually voluntarily dismissed or settled its claims against Ms. Sanchez and BAS.

[¶7] DAPCPA RPO filed a motion for partial summary judgment on its claims against Mr. Hensel for breach of the PSA's non-compete provision and breach of the Covenant Not to Solicit. It argued Mr. Hensel breached the agreements by performing accounting services for fifteen former RPO clients, referring twenty-seven former RPO clients to Ms. Sanchez/BAS, referring three DAPCPA RPO clients to Ms. Sanchez/BAS after his termination, and not reporting any of these violations to DAPCPA RPO. DAPCPA RPO sought a total of $252,313.03 in damages on its breach of contract claims. Mr. Hensel opposed the motion, arguing, among other things, that the PSA and Covenant Not to Solicit were invalid and unenforceable contracts and his actions did not constitute a breach.

[¶8] The district court granted DAPCPA RPO's summary judgment motion in part, and denied it in part. It concluded the PSA and Covenant Not to Solicit were valid and enforceable contracts, Mr. Hensel breached them, and DAPCPA RPO was entitled to damages. However, the court did not award damages at that time because it decided there were genuine issues of material fact as to the amount of damages, if any, DAPCPA RPO suffered with respect to two clients. DAPCPA RPO subsequently withdrew its request for damages with respect to these two clients and voluntarily dismissed all of its remaining claims against Mr. Hensel except its claim for breach of the implied covenant of good faith and fair dealing. After a bench trial, the district court found in favor of Mr. Hensel on that claim. It ultimately entered judgment in favor of DAPCPA RPO for $240,126.28 on the breach of contract claims. Mr. Hensel did not appeal from that judgment.

[¶9]    DAPCPA RPO filed a motion for its attorney fees and costs pursuant to an attorney fee-shifting provision contained in both the PSA and Covenant Not to Solicit.  It sought $31,481.50 in attorney fees and $3,969.65 in costs, for a total of $35,451.15.  Mr. Hensel argued the fee-shifting provision did not allow for an award of fees and costs to DAPCPA RPO but, even assuming it did, the court should disallow fees and costs altogether because DAPCPA RPO's counsel's hourly rates and the hours expended on certain tasks were unreasonable.

[¶10]   The district court decided the fee-shifting provision authorized an award of attorney fees and costs to DAPCPA RPO and the requested costs were reasonable.  It concluded, however, that DAPCPA RPO's counsel's hourly rates and the hours billed for eight tasks were unreasonable and reduced them accordingly.  In the end, the court awarded DAPCPA RPO $17,674.00 in attorney fees and $3,969.65 in costs, for a total of $21,643.65.  Mr. Hensel filed a timely notice of appeal challenging the court's fees and costs award.

## DISCUSSION

[¶11]  Mr. Hensel argues the district court improperly awarded attorney fees and costs to DAPCPA RPO for two reasons.  First, he maintains the plain language of the fee-shifting provision did not authorize an award of fees and costs to DAPCPA RPO.  Second, he argues that even if the fee-shifting provision allowed for an award of fees and costs to DAPCPA RPO, the district court should have declined to award any fees or costs because DAPCPA RPO's counsel charged unreasonable hourly rates, failed to exercise billing judgment, and obtained only limited success in the lawsuit.  We address each argument in turn.

### *Fee-Shifting Provision*

[¶12]  "'Wyoming generally subscribes to the American rule regarding the recovery of attorney fees, under which . . . each party pays his or her own fees.  A prevailing party may, however, be reimbursed for attorney fees when provided for by contract or statute.'" *Douglas v. Jackson Hole Land Tr.*, 2020 WY 69, ¶ 20, 464 P.3d 1223, 1229-30 (Wyo. 2020) (quoting *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012)) (other citations omitted).  "Whether a contract provides a legal basis to award attorney[] fees is a question of contract interpretation.  Contract interpretation is a matter of law which we consider de novo." *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 9, 530 P.3d 288, 292 (Wyo. 2023) (citations omitted).

[¶13]  "[W]hen we interpret contracts, our aim is to determine the intent of the contracting parties." *Holding v. Luckinbill*, 2022 WY 10, ¶ 14, 503 P.3d 12, 17 (Wyo. 2022).

> "[T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them. When the provisions in the contract are clear and unambiguous, the

3

court looks only to the 'four corners' of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate."

*Ecocards v. Tekstir, Inc.*, 2020 WY 38, ¶ 18, 459 P.3d 1111, 1118 (Wyo. 2020) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012), and *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011)) (other citations omitted).

[¶14] DAPCPA RPO requested its attorney fees and costs pursuant to a fee-shifting provision contained in both the PSA and Covenant Not to Solicit. The provision states:

In the event either party fails to perform any of its obligations under this Agreement, the party will be deemed in default. The party in default has the right to cure its default within 15 days of notice from the non-defaulting party. Should the defaulting party fail to cure, the non-defaulting party can pursue any and all remedies available under Wyoming law. The defaulting party will pay all attorney fees and costs of the non-defaulting party should the non-defaulting party prevail on any action to enforce this Agreement.

[¶15] The fee-shifting provision is clear and unambiguous and neither party argues otherwise. It requires the "defaulting party" to pay the "non-defaulting party" its attorney fees and costs if the non-defaulting party "prevail[s] on any action to enforce" the PSA or the Covenant Not to Solicit. Mr. Hensel does not dispute he is the "defaulting party" and DAPCPA RPO is the "non-defaulting party." He argues, however, that DAPCPA RPO did not "prevail" because it did not improve its position by the litigation. According to him, only three of the ten claims DAPCPA RPO alleged in its lawsuit were decided by the district court and, of those three, DAPCPA RPO was successful only on two.[1]

[¶16] Mr. Hensel relies on our definition of "prevailing party" for purposes of awarding the costs of litigation. *See Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 152, 226 P.3d 889, 936 (Wyo. 2010) ("We have defined 'prevailing party' for purposes of awarding costs of litigation as one who 'improves his or her position by the litigation.'" (quoting *Schaub v. Wilson*, 969 P.2d 552, 561 (Wyo. 1998)). The district court determined Mr. Hensel's reliance on the definition of "prevailing party" from *Ultra Resources* was misplaced because that case addressed an award of attorney fees and costs under a statute (Wyoming Royalty Payment Act) which expressly allowed for an award of fees and costs to the

_____

[1] By our count, DAPCPA RPO alleged nine claims. Nevertheless, by stating DAPCPA RPO alleged ten claims, it is apparent that Mr. Hensel is including DAPCPA RPO's claim for a preliminary injunction. Because DAPCPA RPO obtained Mr. Hensel's stipulation to a preliminary injunction, DAPCPA RPO was successful on three of the alleged claims, not two.

"prevailing party," whereas DAPCPA RPO was seeking its fees and costs pursuant to a contract which allowed for an award of fees and costs to the "non-defaulting party." The court nevertheless decided that even applying the definition of "prevailing party" from *Ultra Resources*, the fee-shifting provision authorized an award of fees and costs to DAPCPA RPO because "judgment was entered in [its] favor . . . [and] [c]ertainly, that judgment improved [its] position."

[¶17] The fee-shifting provision does not contain the term "prevailing party." However, it requires the non-defaulting party to have "prevail[ed] on any action to enforce" the PSA or the Covenant Not to Solicit. In other words, the non-defaulting party must also be the "prevailing party." Moreover, while *Ultra Resources* addressed fees and costs under a statute, we have applied its definition of "prevailing party" when deciding whether an easement and restrictive covenant allowed for an award of fees and costs. *See, e.g., Levy v. Aspen S, LLC*, 2021 WY 46, ¶¶ 22-23, 483 P.3d 852, 859 (Wyo. 2021) (easement); *Essex Holding, LLC v. Basic Props, Inc.*, 2018 WY 111, ¶ 64, 427 P.3d 708, 726-27 (Wyo. 2018) (restrictive covenant). That being said, we have also relied on the plain meaning of "prevail," which is to "'triumph,'" and its definition from Black's Law Dictionary, which is "'to obtain the relief sought in an action; to win a lawsuit.'" *Levy*, ¶¶ 22-23, 483 P.3d at 859 (quoting https://www.merriam-webster.com/dictionary/prevail and *Prevail*, Black's Law Dictionary (11th ed. 2019)).

[¶18] Under any of the above definitions, the district court did not err in determining the fee-shifting provision authorized an award of attorney fees and costs to DAPCPA RPO. "Looking to 'the litigation as a whole,'" DAPCPA RPO "improved [its] position by filing the [lawsuit]," "'triumph[ed],'" and "'obtain[ed] the relief [it] sought'" in its lawsuit against Mr. Hensel. *Levy*, ¶ 23, 483 P.3d at 859 (quoting *Ultra Resources, Inc.*, ¶ 152, 226 P.3d at 936, and citing *Acorn v. Moncecchi*, 2017 WY 83, ¶ 12, 397 P.3d 205, 209 (Wyo. 2017)). Prior to DAPCPA RPO filing its lawsuit, Mr. Hensel was providing accounting services to former RPO clients and to DAPCPA RPO clients or referring these clients to Ms. Sanchez/BAS for such services without compensating or notifying DAPCPA RPO as required by the PSA and Covenant Not to Solicit. After filing the lawsuit, DAPCPA RPO obtained (1) Mr. Hensel's stipulation to a preliminary injunction enjoining him from such actions; (2) summary judgment on its breach of contract claims which included a determination by the court that the PSA's non-compete provision and the Covenant Not to Solicit were valid and enforceable contracts, Mr. Hensel breached them, and DAPCPA RPO was entitled to damages; and (3) a judgment against Mr. Hensel for $240,126.28.

[¶19] Mr. Hensel admits on appeal he "technically breached" the PSA and the Covenant Not to Solicit. He maintains, however, that under the plain terms of the PSA's non-compete provision and Covenant Not to Solicit, the effect of his breach was "neutral" because the damages called for by these agreements were intended by the parties to allow him to "re[-]purchase" the clients he improperly served or referred to Ms. Sanchez/BAS. Similarly, he claims the $5,000 he was required to pay for each failure to notify was also "neutral"

5

because it amounted, in essence, to a non-punitive fee. As a result, he maintains the lost clients were essentially "'refunded' [to DAPCPA RPO] at an amount equal to the purchase price, plus a nominal, non-punitive fee" and therefore DAPCPA RPO did not improve its position by the litigation.

[¶20] The PSA stated the money damages Mr. Hensel was required to pay DAPCPA RPO for a breach of the non-compete provision were "intended by [the parties] to create a means by which [Mr. Hensel] may re-purchase [the former RPO] client [he improperly solicited or served]. . . under the same general terms" that DAPCPA purchased the client from RPO. The Covenant Not to Solicit said the intent of the money damages for a breach was to allow Mr. Hensel to "purchase" the DAPCPA RPO client(s) he improperly solicited or served after the termination of his employment. Both the PSA and Covenant Not to Solicit also stated "[t]he parties agree that damages for breach[] . . . are difficult to calculate and the sums specified . . . are reasonably related to [their] purpose and not punitive." The above statements do not render the effect of Mr. Hensel's breach "neutral" or otherwise mean DAPCPA RPO did not prevail in its lawsuit. Rather, they simply seek to validate the liquidated damages provisions of both agreements by indicating the amount of damages is a reasonable, non-punitive measure of DAPCPA RPO's anticipated or actual loss from a breach in a case where damages are difficult to calculate. *See G.C.I., Inc. v. Haught*, 7 P.3d 906, 911 (Wyo. 2000) (a liquidated damages provision is "[a]n agreement, made in advance of breach, fixing the damages therefor[.]"). *See also,* Restatement (Second) of Contracts § 356 (1981) ("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."). If we were to adopt Mr. Hensel's argument, it would be impossible for any party who prevails on a breach of contract claim in a case involving liquidated damages to be considered a prevailing party, effectively nullifying any such contract's attorney fee-shifting provision. Moreover, Mr. Hensel did not simply "purchase" or "re-purchase" the clients he improperly solicited or served; DAPCPA RPO had to sue him to obtain payment and that payment included not only money damages to "purchase" or "re-purchase" the clients but also $5,000 for each failure to notify.

[¶21] Mr. Hensel argues that the fact the district court found in his favor on DAPCPA RPO's claim for breach of the implied covenant renders DAPCPA RPO ineligible for an award of fees and costs under the fee-shifting provision because it did not prevail on its "action" to enforce the PSA and Covenant Not to Solicit. Relying primarily on Wyoming Rule of Civil Procedure 41(b)(1), which allows a defendant to move to "dismiss the action or any claim against it," he maintains the reference in the fee-shifting provision to "any *action* to enforce this Agreement" means all claims in a lawsuit, not some claims. (Emphasis added).

6

[¶22]   There is no indication in either the PSA or the Covenant Not to Solicit that the parties intended "action" to be defined according to our rules of civil procedure.  As a result, we look to the plain meaning of "action."  *See Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶¶ 64-66, 393 P.3d 1279, 1297 (Wyo. 2017) (rejecting Gumpel Trust's definition of "invitee," which relied on premises liability principles outlined in the Restatement (Second) of Torts, and instead applying the plain meaning of "invitee" because "[t]he covenants [did] not use the term 'invitee' in a premises liability context and there is no indication that the parties to the covenants intended to give the term a narrow and 'special meaning,' drawn from premises liability principles").  "Action" means "a thing done: DEED" and "the initiating of a proceeding in a court of justice by which one demands or enforces one's right."   https://www.merriam-webster.com/dictionary/action (last visited Aug. 1, 2023).  Similarly, Black's Law Dictionary defines it as "[t]he process of doing something; conduct or behavior," "[a] thing done; act" and "[a] civil or criminal judicial proceeding." *Action*, Black's Law Dictionary (11th ed. 2019).  Nothing in the plain meaning of the word "action" indicates DAPCPA RPO had to prevail on all of its claims, including its breach of the implied covenant claim, to be entitled to fees under the fee-shifting provision.  It simply had to "prevail" in a judicial proceeding which, as we explained above, it did.[2]

[¶23]   The district court did not err by concluding the fee-shifting provision allowed for an award of attorney fees and costs to DAPCPA RPO.

### Fees and Costs Award

[¶24]   Mr. Hensel argues that, even if the fee-shifting provision applied, the district court should not have awarded any fees or costs given its findings that DAPCPA RPO's counsel charged unreasonable hourly rates and failed to exercise reasonable billing judgment with respect to eight billings.  He also points out DAPCPA RPO was only successful on 20% of its claims and its success was limited to obtaining a re-purchase of the clients plus a nominal, non-punitive fee for failure to notify.  According to Mr. Hensel, under these circumstances, fairness does not require an award of any fees or costs.

[¶25]   "We review an award of attorney fees for an abuse of discretion."  *Mueller v. Zimmer*, 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo. 2007) (citing *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 951 (Wyo. 2000)).  "'The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate

---

[2] The plain meaning of "action" includes acts/conduct other than judicial proceedings.  However, we need not decide what "non-judicial proceeding" acts/conduct are contemplated by the fee-shifting provision because DAPCPA RPO initiated a judicial proceeding.  *See Levy*, ¶ 13, 483 P.3d at 856 ("Although the plain meaning of 'proceeding' includes a lawsuit, a lawsuit is not required for a party to be entitled to his fees under the easement's fee-shifting provision because it allows fees 'whether suit is brought or not.'"  We need not decide, however, what type of "'non-lawsuit'" proceedings are contemplated by the provision because Mr. Levy brought a lawsuit.").

issue is whether the court could reasonably conclude as it did.'" *Id*. (quoting *Cline*, 998 P.2d at 951) (citation and internal quotations omitted).

[¶26] When considering the reasonableness of the fees requested, Wyoming courts apply the federal lodestar test, which requires a determination of "'(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward.'" *Thorkildsen*, ¶ 10, 269 P.3d at 424 (quoting *Weiss v. Weiss*, 2009 WY 124, ¶ 8, 217 P.3d 408, 410-11 (Wyo. 2009), and *Forshee v. Delaney*, 2005 WY 103, ¶ 7, 118 P.3d 445, 448 (Wyo. 2005)). *See also, Circle C Res.*, ¶ 23, 530 P.3d at 295. The legislature set out the discretionary factors to be considered in Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2023). They include: "[t]he time and labor required"; "the novelty and difficulty of the questions involved"; the "skill" required to properly perform the "legal service"; "[t]he likelihood that the acceptance of the particular employment precluded other employment by the lawyer"; "[t]he fee customarily charged in the locality for similar legal services"; "[t]he amount involved and the results obtained"; "[t]he time limitations imposed by the client or by the circumstances"; and "[t]he nature and length of the professional relationship with the client." Section 1-14-126(b). "[E]ven if fees are provided by a valid contractual provision, 'a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney[] fees altogether on the basis that such recovery would be inequitable.'" *Thorkildsen*, ¶ 10, 269 P.3d at 424 (quoting *Dewey v. Wentland*, 2002 WY 2, ¶ 50, 38 P.3d 402, 420 (Wyo. 2002)).

[¶27] In this case, the district court applied the lodestar test and determined DAPCPA RPO had failed to show the hourly rate charged for partner and senior associate work ($495 and $390, respectively) was reasonable in light of the fee customarily charged in the locality and given there were no novel or difficult issues in the case, no indication the attorneys and their firm were uniquely impacted by the time dedicated to the case or that DAPCPA RPO imposed pressure on them, and no evidence that DAPCPA RPO was a difficult client. It reduced the hourly rate for both to $250, an amount Mr. Hensel maintained was "the prevailing market rate" in the local jurisdiction. The court also determined counsel had failed to exercise "billing judgment" with respect to eight billings and subtracted 15.8 billed hours. *See Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 14, 362 P.3d 360, 365 (Wyo. 2015) ("As part of his duty to claim only reasonable fees, an attorney must exercise 'billing judgment.' *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983). '"Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours."'" (quoting *In re NRF*, 2013 WY 9, ¶ 9, 294 P.3d 879, 883-84 (Wyo. 2013), and *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002))).

[¶28] Mr. Hensel does not claim the district court improperly applied the lodestar test nor does he disagree with the court's findings that the charged hourly rates were unreasonable

and DAPCPA RPO's attorneys failed to exercise billing judgment with respect to the eight billings. In fact, he relies on those findings to argue the district court abused its discretion by awarding DAPCPA RPO any attorney fees and costs. The district court recognized it had the discretion to decline to award any fees and costs to DAPCPA RPO, but decided "[f]airness . . . dictates that some amount of fees [and costs] be ordered." Mr. Hensel has not convinced us the court acted unreasonably by awarding fees and costs given DAPCPA RPO's success on its breach of contract claims.

[¶29] Mr. Hensel again claims DAPCPA RPO was not entitled to any fees or costs because it was unsuccessful on 80% of its claims and, with respect to the claims it did succeed on, it managed only to re-purchase the clients and to obtain a nominal, non-punitive fee for failure to notify. We have already rejected these arguments above because the plain language of the fee-shifting provision did not require DAPCPA RPO to succeed on all of its claims to be eligible for an award of fees and costs and Mr. Hensel did not merely "re-purchase" the clients he improperly solicited or served. In any event, DAPCPA RPO only requested, and the court only awarded, those fees and costs relating to the claims upon which DAPCPA RPO did succeed—its breach of contract claims against Mr. Hensel.

[¶30] Finally, Mr. Hensel argues the district court abused its discretion by awarding DAPCPA RPO fees and costs related to its litigation against Ms. Sanchez and BAS. Although DAPCPA RPO stated in the district court that it had removed the billing entries "specifically attributable to claims and actions solely against [Ms. Sanchez and BAS]," Mr. Hensel maintains the court's fees and costs award included the fees associated with reviewing and analyzing Ms. Sanchez's discovery responses and preparing for and taking Ms. Sanchez's deposition and the costs incurred to serve and depose Ms. Sanchez. Because Mr. Hensel did not raise this argument below, we do not consider it. *Colton v. Town of Dubois*, 2022 WY 138, ¶ 2 n.1, 519 P.3d 976, 978 n.1 (Wyo. 2022) ("'[T]his Court will not consider an issue raised for the first time on appeal unless it is jurisdictional or of such fundamental nature that it must be considered.'" (quoting *Moses Inc. v. Moses*, 2022 WY 57, ¶ 12, 509 P.3d 345, 350 (Wyo. 2022))).

[¶31] The district court did not abuse its discretion by awarding attorney fees and costs to DAPCPA RPO.

## CONCLUSION

[¶32] The district court correctly concluded the attorney fee-shifting provision of the PSA and Covenant Not to Solicit authorized an award of fees and costs to DAPCPA RPO. It did not abuse its discretion by determining DAPCPA RPO was entitled to its fees and costs.

[¶33] Affirmed.